Warden, J.
The action in the court below was brought under the provisions of 11 an act to authorize William Lewis, trustee of the Mechanics and Traders’ Bank of Cincinnati, to commence and prosecute suits against the debtors of said bank.” 43 Ohio L. L. 208.
A note for $1,500, dated September 28, 1839, made by Bates, and payable at the M. & T. Bank three months after date, “ to the order of Thomas Moodie, cashier pro tem," was the evidence of indebtedness counted on by the plaintiff. The plea was the general issue, with the common notice of set-off.
The intervention of a jury being waived, and the premises submitted to the court below, a copy of the note declared on was put in evidence (the original being lost, as shown by the proof). The articles of association having- likewise been put in evidence, the *461 defendant below objected to the note on tbe ground that the said Mechanics and Traders’ Bank of Cincinnati was a bank not incorporated by law when said note was executed, and that said note was by law absolutely void.; and the plaintiff in error now insists, on this ground, that the court below erred in giving judgment on the note.
In the course of the evidence, it appeared that Bates was a stockholder and director of the bank, and that the note sued on was given for what the witnesses designate' as nominal stock, being an additional subscrijffion intended, as some witnesses say, to show that there was a considerable amount of stock taken, or, as others have it, to have the effect of preventing certain persons from getting control of the bank, but certainly not intended to be paid. The facts as to the assignment to Lewis were proven so as to bring 461] *the case under the provisions of the act, so far as relates to the right of Lewis to sue in his own name.
We can not treat the question whether the act of 1845 is or is not constitutional, so far as it gives a right of action on a note like the present, as open to discussion in this court. A series of decisions, pronounced upon this enactment, and others of like character, has fully established its constitutionality. See Trustees of Cuyahoga Falls R. E. Ass’n v. McCaughey, 2 Ohio St. 152, and cases there cited. We have no disposition to disturb those decisions. Whether the act before us undertook to make valid what an earlier law had declared void, or (as is, I think, a better expression of its character and objects) merely made a new rule of estoppel for the benefit of creditors, its provisions were in strict harmony with public justice. In the language of Hitchcock, J., “ it violates no contract. Its very object is that contracts may be enforced.” Lewis, Trustee, etc., v. McElvain, 16 Ohio, 355.
Nor can the authority of the trustee to sue stockholders be longer questioned. The case last cited upholds the law in this as well as the former particular.
Was the understanding that the note was given for sham stock sufficient to avoid it in the action brought by Lewis?
The testimony was in substance as follows :
Dr. Lakey says: In 1839 nominal stock was made at the instance of Surtees, the cashier, who afterward absconded, and who said the money for the nominal stock was not expected to be called for, and *462 was intended to show that there was a considerable amount of stock taken.
Tatriok Codey says the object was to control Surtees.
So says John T. Armstrong.
Stanhope S. Eowe says it was to prevent John H. James from obtaining the control of the bank.
All agree that the stock was never to be paid.
Now it matters not whether the object of defrauding the public by the pretense of a large subscription of stock, or the purpose of preventing the predominance of certain ^stockholders, induced the [462 making of this nominal stock. As partners in an association doing an unlawful banking business, these men can not be released from a subscription which may have induced creditors to trust the bank.
Under an act which, as has already been declared, is designed to operate in favor of the creditors of this bank, we must hold the plaintiff in error to his liability on this note. True, it was meant to be, at the same time, a fact and a fiction; a fact so far, perhaps, as to enable the defendant and others to control the bank — a fiction so far as to become a nullity in the day of payment. In law, however, it must be treated as not a fiction, but a fact, warranting the judgment which we are asked to reverse. To allow the private understanding of these holders of what is termed the “ nominal stock” to take from the creditors what enabled those fictitious stockholders to extend and control the operations of the bank, would be a mockery of justice and a disregard of the chief purpose of the statute we have declared to be constitutional.
A single question remains.
The defendant below claimed the right to set off $300, paid by Bates since the commencement of this suit, on an execution against him and others on a judgment rendered in favor of the State Bank of Missouri, against Bates and others, as partners in said Mechanics and Traders’ Bank.
The set-off was not allowed by the Superior Court, and judgment was given against Bates, for the full face of the note and interest.
The right to set off the $300 was rightly denied. The object of the act of 1845 was not to change the ordinary rules of set-off, or to provide for the settlement of the partnership concerns of the so-called stockholders in the suits for which it provided as suits at law. The statute contemplates, indeed," not only law, but chancery proceedings, to recover the several amounts of indebtedness to the *463, 464 bank; but it enables the trustee to bring one or several suits, and to proceed either at law or in chancery, according to what would *have been the rights of the association, if it had been in cor- [463 porated, so far, at least, as rights of set-off or contribution are concerned. Since, therefore, the right of set-off would, 'in any other action at law (at least under the common notice filed with the general issue) be limited to matters in existence at the time of suit brought, we must not extend it in this case to claims subsequently arising.

Judgment affirmed.